CRAIG H. MISSAKIAN (CABN 125202)
United States Attorney

JEFF MITCHELL (CABN 236225)
Chief, Criminal Division

AMANI S. FLOYD (CABN 301506)
Assistant United States Attorney

     60 South Market Street, Suite 1200
     San Jose, California 95113
     Telephone: (408) 535-5596
     FAX: (408) 535-5066
     Amani.Floyd@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Case No. CR-22-216-BLF |
| Plaintiff, | ) ) | **UNITED STATES' SENTENCING MEMORANDUM** |
| v. | ) ) | |
| LANCE TORREGROZA, | ) ) | |
| Defendant. | ) ) ) | |

## I.    <u>INTRODUCTION</u>

Defendant Lance Torregroza was one of two defendants originally charged by criminal complaint on April 16, 2021 with violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B) – Distribution of 5 Grams or More of Methamphetamine for his role in supplying one kilogram of methamphetamine to a confidential informant on December 9, 2020. Dkt. 1. On June 6, 2022, Torregroza was charged via Information with the same crime. Dkt. 48. However, on October 24, 2023, the government filed a Superseding Information, dropping the 5-year mandatory minimum against Torregroza. *See* Dkt. 68.

On July 9, 2024, Torregroza pled guilty to Count One of the Superseding Information pursuant to a plea agreement. Dkt. 80. Torregroza is set for sentencing before the Honorable Beth Labson Freeman on April 7, 2026.

GOV'T SENTENCING MEMO
CR-22-216-BLF

As discussed in more detail below, the government agrees with U.S. Probation's calculation of the applicable Guidelines range of 70 - 87 months' imprisonment. However, while Probation recommends a sentence of 36 months' imprisonment, the government believes that a more serious punishment is warranted in this case considering the serious nature of the offense and the need to deter others from engaging in similar crimes. As such, the government recommends a sentence of 60 months' imprisonment, which is a below-Guidelines sentence, followed by a term of supervised release, for Torregroza's unlawful conduct.

## II.    BACKGROUND

### A.    Offense Conduct

This prosecution is the result of a major narcotics investigation into a large-scale methamphetamine and cocaine trafficking organization that was operating in the San Jose, California area and that was led by an individual named Ramon Covarrubias Rangel (the "Covarrubias DTO"). During the investigation into the Covarrubias DTO, Torregroza was intercepted several times on two different wiretaps that were installed on Covarrubias DTO members' telephones. Many of these calls are believed to have been related to drug trafficking.

Starting in late November 2020, a confidential informant (the "CI") contacted Torregroza's original co-defendant, Jesus Diaz-Magallon, about purchasing methamphetamine from Diaz-Magallon. Presentence Investigative Report ¶ 7. Diaz-Magallon and the CI eventually worked out a deal in which Diaz-Magallon agreed to sell one kilogram of methamphetamine to the CI for $6,200. *Id*.

On December 8, 2020, the day prior to the scheduled transaction, Diaz-Magallon and the CI spoke about the upcoming deal. During the call, Diaz-Magallon told the CI that all that he needed to know was what kind of methamphetamine the CI wanted and the quality. Diaz-Magallon told the CI that he would "call right now to check it out." Diaz-Magallon then called Torregroza several times.

On December 9, 2020, the day of the scheduled transaction, agents established surveillance at the location that Diaz-Magallon provided to the CI. *Id*. ¶ 7, 8. That afternoon, Diaz-Magallon told the CI that the methamphetamine was being delivered. *Id*. ¶ 9. Approximately 20 minutes later, Torregroza arrived at the provided address in a red Dodge Ram. *Id*. ¶ 10. After briefly talking, Torregroza followed Diaz-Magallon to a Bass Pro Shop in San Jose, California where Diaz-Magallon met with the CI. *Id*. ¶ 11.

The CI then retrieved the one kilogram of methamphetamine from the front passenger floorboard of Torregroza's vehicle and paid Diaa-Magallon the agreed upon $6200. *Id*.

The methamphetamine that Torregroza supplied and transported to the deal was later confirmed to be 985.9 grams of methamphetamine hydrochloride, or "Ice." *Id*. ¶ 14.

## III.    GUIDELINES CALCULATION

The government concurs with Probation's calculation of Torregroza's Guidelines range—i.e., a Total Offense Level of 26 and Criminal History Category II, yielding an advisory Guidelines range of 70 - 87 months' imprisonment.

The basis for the mitigating role adjustment (minor participant) under U.S.S.G. §3B1.2(b) is that Torregroza was only responsible for sourcing and transporting the methamphetamine for the one controlled buy on December 9, 2020. Torregroza was not the person who arranged the deal and did not promise any additional deals in the future. Additionally, Torregroza is believed to have been a minor dealer in Covarrubias DTO. While his conduct was serious, it was not as significant as many others in the investigation. For example:

- Covarrubias, who is believed to be the leader/organizer of the Covarrubias DTO, is believed to have been trafficking hundreds of kilograms of methamphetamine in the San Jose, CA area. *See* CR 21-100-EJD.

- Jorge Lozano Guzman, who was a courier and facilitator for the Covarrubias DTO, arranged and conducted four controlled buys of methamphetamine and cocaine during the course of the investigation. *See* CR 21-081-EJD.

- Kelman De La Cruz Pedroza, a narcotics broker who worked with the Covarrubias DTO, was intercepted arranging a 10-kilogram cocaine deal and arranged two drug deals with a confidential source during the course of the investigation. *See* and CR 21-409-EJD.

- Erik Alexandro Torres Cruz, who was a broker and courier for the Covarrubias DTO, arranged three methamphetamine deals during the course of the investigation. *See* CR-21-082-EJD.

Again, while Torregroza' s conduct was serious, he is less culpable than the average participant in the DTO.

//

GOV'T SENTENCING MEMO                                                                                3
CR-22-216-BLF

## IV.    SENTENCING RECOMMENDATION

The Court must impose a sentence sufficient, but not greater than necessary, to reflect the seriousness of the offense, deter others from committing similar crimes, protect the public from the defendant, and rehabilitate the defendant.  18 U.S.C. § 3553(a)(2); *United States v. Carty*, 520 F.3d 984, 991 (9th Cir. 2008).  Section 3553(a) sets forth several factors that the Court must consider in determining a just sentence: (1) the nature and circumstances of the offense and the defendant's history and characteristics; (2) the purposes of sentencing; (3) the kinds of sentences available; (4) the Guidelines range for sentences; (5) any pertinent policy statements; (6) the need to avoid unwarranted sentencing disparities; and (7) the need to provide restitution to any victims of the offense.  18 U.S.C. § 3553(a); *Carty*, 520 F.3d at 991.

Importantly, although they are not binding, the Guidelines "reflect a rough approximation of sentences that might achieve § 3553(a)'s objectives," *Rita v. United States*, 551 U.S. 338, 350 (2007), and should be the starting point and the initial benchmark for sentencing.  *Gall v. United States*, 552 U.S. 38, 49 (2007).

In this case, the government's recommendation is driven by the seriousness of Torregroza's offense conduct, the need to deter others from committing similar offenses, and the need to avoid unwarranted sentencing disparities.  While Torregroza did not arrange the December 9, 2020 methamphetamine deal and is not the most culpable member of the Covarrubias DTO, his conduct was nonetheless serious.  At Diaz-Magallon's request, and with short notice, Torregroza was able to procure 985.9 kilograms of pure methamphetamine and knowingly transported it to the deal.  Torregroza did not act out of mistake or ignorance.  He knowingly and consciously decided to participate in the unlawful sale of a dangerous and addictive drug, and just punishment should follow.

The government's below-Guidelines recommendation not only takes into account the nature and seriousness of the charged offense, the quantity of drugs involved, Torregroza's role in the criminal conduct, his criminal history, the purposes of sentencing, and his acceptance of responsibility, it also takes into account mitigating factors such as Torregroza's good performance while on pretrial release and gainful employment.

The government's recommendation is also consistent with the 15-month downward variance that

GOV'T SENTENCING MEMO                                                                                    4
CR-22-216-BLF

Diaz-Magallon received.    On February 10, 2026, Diaz-Magallon was sentenced to 36 months' imprisonment.    However, Diaz-Magallon's Guideline range was much lower than Torregroza's (51 - 63 months vs. 70 - 87 months).    Considering that Diaz-Magallon and Torregroza are relatively equally culpable (Diaz-Magallon arranged the deal/planned future deals vs. Torregroza sourced/transported the drugs), a 60-month sentence is reasonable and avoids unwarranted sentencing disparities between Diaz-Magallon and Torregroza.

## V.    CONCLUSION

In sum, considering the 3553(a) factors, the United States respectfully requests that the Court sentence Torregroza to a below-Guidelines sentence of 60 months' imprisonment, followed by a term of supervised release.

DATED: March 31, 2026                    Respectfully submitted,

                                        CRAIG H. MISSAKIAN
                                        United States Attorney


                                        _____/s/_____
                                        AMANI S. FLOYD
                                        Assistant United States Attorney

GOV'T SENTENCING MEMO                                                    5
CR-22-216-BLF